IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| TROY ENGLERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:16-cv-01043 (GBL/TCB) |
| | ) | |
| THE BANK OF NEW YORK MELLON, | ) | |
| f/k/a THE BANK OF NEW YORK, AS | ) | |
| TRUSTEE FOR THE HOLDERS OF THE | ) | |
| CERTIFICATES, FIRST HORIZON PASS- | ) | |
| THROUGH CERTIFICATES SERIES FHASI | ) | |
| 2005-AR3, BY FIRST HORIZON HOME | ) | |
| LOANS, A DIVISION OF FIRST | ) | |
| TENNESSEE BANK NATIONAL | ) | |
| ASSOCAITION, MASTER SERVICER, IN | ) | |
| ITS CAPACITY AS AGENT FOR THE | ) | |
| TRUSTEE UNDER THE POOLNG AND | ) | |
| SERVICING AGREEMENT, | ) | |
| | | |
| Defendant. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court, first, on Defendant The Bank of New York Mellon's

Motion for Summary Judgment (Dkt. No. 26) and, second, on Plaintiff Troy Englert's Partial

Motion for Summary Judgment (Dkt. No. 36).[1]  This case concerns Plaintiff's two-count

Complaint alleging that Defendant breached a mortgage agreement by (1) improperly crediting

payments timely made by Plaintiff, and (2) improperly charging Plaintiff for force-placed

insurance even though Plaintiff's insurance never lapsed.  Defendant's motion seeks summary

judgment on both counts, while Plaintiff's motion seeks summary judgment on Count I only.

---

[1] Defendant's full name is The Bank of New York Mellon f/k/a The Bank of New York, as
Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates
Series FHASI 2005-AR3, by First Horizon Home Loans, a Division of First Tennessee Bank
National Association, Master Servicer, in its Capacity as Agent for the Trustee Under the
Pooling and Servicing Agreement.

There are two issues before the Court. The first issue is whether Defendant is entitled to summary judgment with respect to Count II, where Plaintiff asserts that he maintained the insurance required under the mortgage agreement and did not receive Defendant's letters requesting proof of insurance. The Court grants Defendant's Motion for Summary Judgment with respect to Count II because, regardless of whether Plaintiff received and responded to Defendant's letters, Defendant put forth uncontroverted evidence indicating that Plaintiff's insurance lapsed. In addition, the insurance documents put forth by Plaintiff indicate that during certain policy periods, the insurance policy did not comply with the terms of the mortgage agreement.

The second issue is whether either party is entitled to summary judgment with respect to Count I, where Plaintiff asserts that he made all required payments under the mortgage agreement and that Defendant improperly credited his account. With respect to Count I, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's cross-Motion for Summary Judgment for two reasons. First, Defendant has put forth detailed evidence demonstrating that Plaintiff failed to timely pay the full amount owed, and that Plaintiff remains in arrears. Second, Plaintiff admits that he has not paid the full amount he owes in principal and interest, and Plaintiff's evidence is insufficient to raise a genuine dispute of material fact that Defendant misapplied any particular payment.

# I. BACKGROUND

## A. Factual Background[2]

In September 1999, Plaintiff purchased a home located in Alexandria, Virginia (the "Property"). Since that time, Plaintiff has owned and operated multiple companies, including Patrick's Design, LLC, Englert Development Corp., and ENG Imports, LLC. ENG Import Group, LLC was created in 2011.

On April 1, 2005, Plaintiff refinanced his home mortgage loan. The refinance transaction was evidenced by, among other things, an adjustable rate note (the "Note"). The loan of $525,000.00 made payable to First Horizon Home Loan Corporation (the "Loan") was secured by a deed of trust against the Property (the "Deed of Trust"). After origination, First Horizon Home Loan Corporation ("First Horizon") transferred the Loan to Defendant, The Bank of New York. On or about August 16, 2011, Nationstar became the loan servicer on behalf of Defendant.

The payment provisions of the Note provide, in pertinent part:

[Plaintiff] will make a payment on the first day of every month . . . .

[Plaintiff's] payment will consist only of the interest due on the unpaid principal balance of this Note. [After May 1, 2015], [Plaintiff] will pay principal and interest by making a payment every month as provided below. . . .

[Plaintiff's] monthly payment will be in the amount of U.S. $2515.63 . . . .

---

[2] In response to the assertion of undisputed facts set forth in Defendants' Motion for Summary Judgment, Plaintiff did not properly address each assertion in accordance with Federal Rule of Civil Procedure 56 and Local Civil Rule 56. To the extent that Plaintiff separately listed disputed facts in his Response, *see* Dkt. No. 33 at 3, and those facts encompass one of Defendant's assertions, *see* Dkt. No. 27 at 3–8, the Court will treat the facts as disputed. In the Analysis section of this Memorandum Opinion, the Court will address whether the dispute is "genuine" and the fact is "material." Additionally, this Background section sets forth non-duplicative, pertinent facts set forth in the Memorandum in Support of Plaintiff's Partial Motion for Summary Judgment. *See* Dkt. No. 31 at 4–5 (¶¶ 9, 10).

The initial fixed interest rate [Plaintiff] will pay will change to an adjustable interest rate on the first day of May, 2015. . . .

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendars after the date it is due, [Plaintiff will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of [Plaintiff's] overdue payment . . . .

If [Plaintiff] do[es] not pay the full amount of each monthly on the date it is due, [Plaintiff] will be in default. . . .

Dkt. No. 27-1 at 7–9 (Ex. A to Def.'s Mem.); Dkt. No. 33-1 at 2–4 (Ex. 1 to Pl.'s Mem.).

The payment provisions of the Deed of Trust provide, in pertinent part:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** . . . Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. . . .

**2. Application of Payments or Proceeds.** . . . Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [Funds for Escrow Items]. Such payments shall be applied to each Periodic Payment in the order in which it became due. . . . If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.

Dkt. No. 27-1 at 17–18 (Ex. B to Def.'s Mem.); Dkt. No. 33-10 at 5–6 (Ex. 10 to Pl.'s Mem.).

In addition to containing payment provisions, the Deed of Trust also provides the following insurance provisions:

**5. Property Insurance.** . . . *If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.* . . . Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. . . .

4

> All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and *shall name Lender as mortgagee and/or as additional loss payee*. . . . If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.

Dkt. No. 27-1 at 19 (Ex. B to Def.'s Mem.); Dkt. No. 33-10 at 7 (Ex. 10 to Pl.'s Mem.) (emphasis added).

The Deed of Trust also contains a notice provision which provides:

> **15.  Notices.** . . . Any notice to [Plaintiff] in connection with this Security Instrument shall be deemd to have been given to [Plaintiff] when mailed by first class mail or when actually delivered to [Plaintiff's] notice address if sent by other means."

Dkt. No. 27-1 at 24 (Ex. B to Def.'s Mem.); Dkt. No. 33-10 at 12 (Ex. 10 to Pl.'s Mem.). Additionally, the Deed of Trust contains a choice-of-law provision stating that the governing law is federal law and the law of the jurisdiction in which the Property is located—*i.e.*, Virginia law. *See id.*

The *first* factual dispute concerns whether Plaintiff had a contractual obligation to respond to Nationstar's correspondence requesting proof of insurance.  On May 19, 2012 and June 21 2012, Nationstar sent letters to Plaintiff requesting confirmation of insurance coverage on the Property.  The May 19, 2012 letter cautioned Plaintiff that if "evidence of hazard insurance is not received within 30 days from the date of this letter, Nationstar Mortgage may be forced to obtain coverage to protect our interest in your property."  The letter warned that if Nationstar had to obtain coverage, the "premium will be charged to your escrow account."  The following year, Nationstar again sent letters on May 19, 2013 and on June 19, 2013, requesting information from Plaintiff to confirm that he had insurance coverage on the Property.  Plaintiff's opposition brief states that he "did not receive any requests from Nationstar or [Defendant] for

5

proof of insurance or records of premiums paid." The parties agree, however, that Nationstar obtained force-placed insurance for the May 2012 – 2013 and May 2013 – 2014 policy periods.

The *second* factual dispute concerns whether Plaintiff's insurance ever lapsed. Defendant has put forth evidence of activity logs from Plaintiff's insurer. Dkt. No. 27-3 at 42 (Ex. O to Def.'s Mem.). In response to a request to reinstate Plaintiff's insurance in 2015, an email in the activity logs states that "there is a pattern of poor billing on this policy with 9 non-pay notices sent and 1 prior reinstatement." Defendant also has put forth evidence of a letter addressed to Plaintiff from his insurer and dated November 26, 2011. Dkt. No. 27-3 at 40 (Ex. N to Def.'s Mem.). The letter relates to the May 2011 – 2012 policy period and states, "as of [November 11, 2011], your policy has been cancelled for non payment of premium." Plaintiff's opposition brief generally responds that "[a]t all times, [he] maintained all insurance required under the Agreement." Furthermore, Plaintiff's opposition brief includes annual coverage summaries from his insurer, and the summaries run from May to May for each of the four years that Plaintiff provided a summary sheet. *See* Dkt. No. 33-5 (Ex. 5 to Pl'.s Resp.). The May 2011 – 2012 and the May 2012 – 2013 coverage summaries do *not* list Defendant, Nationstar, or First Horizon as either a mortgagee or as an additional loss payee. The May 2013 – 2014 and the May 2014 – 2015 coverage summaries list Nationstar as a mortgagee. Although the other coverage summaries indicate an effective date of May 2nd, the May 2013 – 2014 coverage summary lists an effective date of August 7, 2013. The parties agree that, at some point, Plaintiff learned that Defendant had obtained force-placed insurance, Plaintiff provided Defendant (or Nationstar)

with proof of insurance, and Defendant refunded Plaintiff a pro rata portion of the force-placed insurance premiums. *See* Dkt. No. 1-1 ¶¶ 44–45 (Compl.); Dkt. No. 27 at 7 (Def.'s Mem.).[3]

The *third* factual dispute concerns whether Plaintiff timely paid the amounts required under the Note and Deed of Trust (collectively, "the Mortgage Agreement"). On the one hand, Defendant has put forth a "Detail Transaction History," which purportedly catalogues each payment transaction on Defendant's account from August 2011 (when Nationstar became the loan servicer) until December 2016. (Dkt. No. 27-1 at 114 (Ex. F to Def.'s Mem.). At his Rule 30(b)(6) deposition, the corporate representative for Defendant explained the transaction history at length, from Defendant's perspective. *See id.* at 44. On the other hand, Plaintiff offered his own testimony and a chart cataloguing, among other things: (1) the date listed on each check, which were typically checks for his business account; (2) the date the check was cashed; and (3) Plaintiff's purported monthly balance. Plaintiff's chart corresponds with the checks that both parties have submitted as evidence. However, the parties dispute why there is sometimes days or weeks between the date on the check and when Nationstar ultimately cashed the check. Plaintiff contends that Defendant did not timely process the checks, while Defendant contends that Plaintiff did not send the checks when he claims he did.

The *fourth* factual dispute concerns whether Nationstar, acting on Defendant's behalf, misapplied payments when crediting Plaintiff's account. Beginning in late 2012, Plaintiff engaged in a series of correspondence with Nationstar regarding its purported failure to properly credit Plaintiff's payments. Nationstar sent Plaintiff numerous invoices claiming that his account was in arrears. The Complaint alleges that Plaintiff "made payments . . . up to and including

---

[3] Plaintiff's Complaint indicates he agrees that Defendant provided some form of an insurance refund, but Plaintiff did not respond directly to Defendant's assertion of fact after Defendant moved for summary judgment.

February 2013." The Complaint further alleges that around February 2013, Defendant "received payment from [Plaintiff] but did not credit the payment to his account." Based upon Defendant's calculations, through December 31, 2016, Plaintiff was behind on his Loan in principal and interest payments in the amount of $21,046.90. Defendant also contends that between February 2013 and the filing of its motion, Plaintiff missed several payments, made payments late, and made payments that were less than the full amount owed. After applying funds held in suspense and other amounts owed, such as late charges and corporate advances, Defendant contends that Plaintiff owes $27,248.20. The parties do not dispute that after the Loan switched from requiring interest-only payments to principal and interest payments after May 2015, Plaintiff paid only the interest payment amount ($2,515.63). Moreover, at the motion hearing and through counsel, Plaintiff conceded that his mortgage payment had changed on June 1, 2015 from interest-only in the amount of $2,515.63 to principal and interest in the amount of approximately $3,006.70. Yet, Plaintiff has continued to pay only the interest amount, which is roughly $500 less than the required monthly payment. Plaintiff asserts that he did not receive notice of the change in payment amount until shortly before litigation began, but Plaintiff concedes that he has continued to not make payments towards principal.

Plaintiff has not challenged any particular transaction that Defendant recorded; instead, Plaintiff's position is that he made every payment when it was due, with three exceptions. Plaintiff's briefs assert that in June through August 2014, he sent three check payments to Nationstar and then to Nationstar's counsel, but Nationstar never cashed those three checks. Apart from those three payments, Plaintiff contends that he is not in arrears.

8

## B. Procedural Background

On February 4, 2014, Plaintiff sued Nationstar in the Circuit Court of the City of Alexandria, and the lawsuit was removed to this Court. *Englert v. Nationstar Mortgage, Inc.*, No. 1:15-cv-00303-GBL-MSN. In that lawsuit, Plaintiff sued Nationstar for breach of contract, claiming, among other things, that Nationstar misapplied payments and wrongfully obtained force-placed insurance. After summary judgment was entered in Nationstar's favor on the breach of contract and defamation claims, Plaintiff voluntarily dismissed the remaining claim under the Real Estate Settlement Procedures Act without prejudice. This Court grant summary judgment in Nationstar's favor on Plaintiff's breach of contract claims because Nationstar, as the loan servicer, did not have contractual privity with Plaintiff. Nationstar began foreclosure proceedings around February 2015, but the foreclosure never occurred.

On April 15, 2016, Plaintiff sued Defendant, The Bank of New York, in the case at hand. In essence, Plaintiff's two-count Complaint alleges that Defendant breached (1) the Mortgage Agreement's payment provisions, and (2) the Mortgage Agreement's force-placed insurance provisions. On February 23, 2017, Defendant moved for summary judgment on both counts. That same day, Plaintiff moved for partial summary judgment on Count I only. The Court held a motions hearing on March 29, 2017.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*; *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citations omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va.*, 718 F.3d at 313 (citation omitted). If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

When parties file cross-motions for summary judgment, courts consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392–93 (4th Cir. 2014) (citation and internal quotation marks omitted).

**B. Analysis**

The Court will analyze Plaintiff's two breach of contract claims in reverse order. First, the Court grants Defendant's Motion for Summary Judgment with respect to the claim for breach of the Mortgage Agreement's force-placed insurance provisions. Second, the Court grants

Defendant's Motion for Summary Judgment with respect to the claim for breach of the Mortgage Agreement's payment provisions.

### 1. Count II: Breach of the Contract's Insurance Provisions

The Court grants Defendant's Motion for Summary Judgment on Count II of Plaintiff's Complaint.

In this diversity action, the Court must apply Virginia's choice-of-law rules because Virginia is the jurisdiction in which this Court sits. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). Virginia choice-of-law rules lead to the application of Virginia's substantive law for purposes of Plaintiff's breach of contract claims because the Deed of Trust includes a Virginia choice-of-law provision, and because the Note was made in and was to be performed in Virginia. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999); *Equitable Trust Co. v. Bratwursthaus Mgmt. Corp.*, 514 F.2d 565, 567 (4th Cir. 1975).

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). The parties do not dispute the first element (the existence of a legally enforceable obligation), and the Court need not address the dispute concerning the third element (the scope of Plaintiff's damages).[4] The second element is at issue, which concerns whether Defendant breached the Mortgage Agreement by improperly obtaining and charging Plaintiff for force-placed insurance.

---

[4] Because the Court will enter judgment in favor of Defendant, the Court need not address whether Plaintiff may recover consequential damages arising from the alleged breach of the Mortgage Agreement.

As discussed above, the parties dispute whether Plaintiff had a contractual obligation to respond to Nationstar's correspondence requesting proof of insurance. In short, Plaintiff claims that did not receive Nationstar's correspondence. The Deed of Trust provides that any notice sent by first class mail is deemed to have been given to Plaintiff. The Deed of Trust further provides, "[i]f Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices." In any event, this first factual dispute is not "material" because it does not affect the outcome of this suit under the governing law. *See Judd*, 718 F.3d at 313.

The alleged breach of the insurance provisions in the Deed of Trust turns on the second factual dispute, concerning whether Plaintiff's insurance ever lapsed. Under the terms of the Deed of Trust, if Plaintiff failed to maintain the required insurance coverage, Defendant had the option to obtain force-placed insurance at Plaintiff's expense. In addition, the Deed of Trust required Plaintiff's insurance policy to name the lender "as mortgagee and/or as additional loss payee." Defendant has provided evidence indicating that Plaintiff's insurer cancelled his policy in November 2011 for non-payment. The evidentiary record does reflect that, at some point, Plaintiff had his insurance reinstated. However, Plaintiff has failed to come forward with sufficient evidence indicating that, at all times relevant to this dispute, Plaintiff had the required insurance. In fact, the four years' worth of policy summaries provided by Plaintiff indicates that for two of those years, May 2011 – 2012 and May 2012 – 2013, Plaintiff's insurance did not list the lender, as required under the Deed of Trust.

In sum, the evidence provided by Plaintiff indicate that his insurance lapsed at least once, and the evidence provided by Plaintiff indicate that part of the time when he had insurance, it did not comply with the terms of the Mortgage Agreement. Therefore, the Mortgage Agreement authorized Defendant to obtain force-placed insurance. The Court holds that Plaintiff has not

raised a genuine dispute of material fact with regards to Defendant breaching the Mortgage Agreement's insurance provisions, and Defendant is entitled to judgment as a matter of law because no reasonable jury could return a verdict for Plaintiff on Count II. Because there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law, the Court grants Defendant's Motion for Summary Judgment with respect to Count II.

2. Count I: Breach of the Contract's Payment Provisions

With respect to Count I of the Complaint, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's cross-Motion for Summary Judgment.

As stated above, an essential element of a breach of contract claim is Defendant's breach of a legally enforceable obligation. *See Filak*, 594 S.E.2d at 614. Here, the payment provisions of the Note (1) require Plaintiff to make monthly mortgage payments on the first day of every month, and (2) authorize Defendant to impose a 5 percent late charge if it has not received the full amount of any monthly payment by the end of 15 calendars after the date the payment was due. The payment provisions of the Deed of Trust describe how Defendant may apply payments to principal, interest, escrow items, and late charges. The Deed of Trust also describes how payments are applied in situations where Plaintiff makes a partial payment insufficient to bring the Loan current.

The third factual dispute concerns whether Plaintiff timely made certain payments and whether Defendant timely processed such payments. In response to Defendant's motion and in support of his own motion, Plaintiff contends that he made every payment required under the Mortgage Agreement. To support this contention, Plaintiff has provided a chart describing the date listed on each check, the date the check was cashed, and Plaintiff's purported monthly balance. However, this factual dispute is not "material" because it does not affect the outcome of

13

this suit. *See Judd*, 718 F.3d at 313.  For purposes of the motions at hand, the Court may assume that Plaintiff made each check payment on the earliest possible date—the date listed on the check.

Plaintiff's contention that he made all the required payments would still be inaccurate for at least three reasons.  First, as discussed above, Defendant was permitted to obtain and charge Plaintiff for force-placed insurance because his coverage lapsed.  Although Defendant's records account for the cost of force-placed insurance, Plaintiff's chart does not.  Second, Plaintiff admits that since June 1, 2015, he has paid roughly $500 less than the principal and interest amount due each month.  Third, although Defendant's records account for multiple late charges in the amount of $125.78 (which is 5 percent of the $2,515.63 interest payments), Plaintiff's chart does not.  Based upon Plaintiff's own chart, however, he would have incurred at least two late charges.  Plaintiff's chart, along with the corresponding check, indicates that Plaintiff made the August 1, 2012 payment no earlier than August 18, 2012, because that is the date listed on the check.  Yet, Plaintiff's chart does not account for the late charge imposed for payments received more than 15 days after the payment was due.  Another example is that Plaintiff made an electronic (or ETF) payment on or about November 29, 2012.  According to its records, Defendant received a $2,515.63 payment on November 28, 2012.  Plaintiff's chart does not account for any charges attributable to this late payment.

The Court need not analyze the effect of a concession that Plaintiff made.  Plaintiff's brief admits that Defendant never cashed three checks between June and August 2014.  (Dkt. No. 33 at 6 n.5.)  Even when taking that concession into consideration, Plaintiff's account would still be in arrears.  As Defendant's records reflect, Plaintiff's account had been in arrears by late

2012. Thereafter, every time Plaintiff made an interest-only payment, he failed to pay the entire balance due.

The fourth and final factual dispute concerns whether Nationstar, acting on Defendant's behalf, misapplied payments when crediting Plaintiff's account. Other than Plaintiff's blanket statement that he made all the required payments, Plaintiff has not presented any evidence that Defendant misapplied a particular payment when cataloguing the transaction history of Plaintiff's account. For the reasons stated above, Plaintiff's chart and supporting evidence are inaccurate and are insufficient to raise a genuine dispute of material fact. *See Dareing v. Bank of Am. Corp.*, No. 1:14-cv-1525-RWS-LTW, 2016 WL 7839427, at *7 (N.D. Ga. Aug. 8, 2016), *report and recommendation adopted by* 2016 WL 7888019 (N.D. Ga. Sept. 15, 2016) (granting defendant's motion for summary judgment where plaintiff failed to raise a genuine dispute of material fact because, among other things, plaintiff did not explain why she concluded that the payments were misapplied); *Kassem v. Ocwen Loan Servicing, LLC*, No. 14-11143, 2015 WL 5559906, at *10 (E.D. Mich. Sept. 18, 2015) (granting defendant's Rule 12(b)(6) motion to dismiss plaintiff's breach of mortgage contract claim because plaintiff failed to allege which payments were not properly applied and why).

In sum, the Court holds that there is no genuine dispute of material fact with regards to Defendant breaching the Mortgage Agreement's payment provisions, and Defendant is entitled to judgment as a matter of law because no reasonable jury could return a verdict for Plaintiff on Count I. Therefore, with respect to Count I, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's cross-Motion for Summary Judgment.

## III. CONCLUSION

Plaintiff fails to raise a genuine dispute of material fact concerning whether Defendant breached the Mortgage Agreement by improperly obtaining insurance or by misapplying mortgage payments. Further, Defendant is entitled to judgment as a matter of law.

Accordingly, it is hereby

**ORDERED** that the Motion for Summary Judgment filed by Defendant The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHASI 2005-AR3, by First Horizon Home Loans, a Division of First Tennessee Bank National Association, Master Servicer, in its Capacity as Agent for the Trustee Under the Pooling and Servicing Agreement (Dkt. No. 26) is **GRANTED**; and it is further

**ORDERED** that Plaintiff Troy Englert's Motion for Summary Judgment (Dkt. No. 36) is **DENIED**.

**IT IS SO ORDERED.**

ENTERED this _29th_ day of March, 2017.

Alexandria, Virginia

_____ /s/

Gerald Bruce Lee
United States District Judge

16